# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

GREGORY F. McCRACKEN,

                Plaintiff,


v.                              **MEMORANDUM OF LAW & ORDER**
                                 Civil File No. 11-3480 (MJD/JJK)


CARLETON COLLEGE,

                Defendant.


_____

Jeffrey D. Schiek and Philip G. Villaume, Villaume & Schiek, P.A., Counsel for Plaintiff.

Daniel G. Wilczek and Jennifer J. Kruckeberg, Faegre Baker Daniels LLP, Counsel for Defendant.

_____


## I.    INTRODUCTION

      This matter is before the Court on Defendant's Motion for Summary Judgment.  [Docket No. 10]  The Court heard oral argument on June 7, 2013.  For the reasons that follow, the Court grants in part and denies in part Defendant's motion.

1

II.     **BACKGROUND**

A.     **Factual Background**

1.  **The Parties**

Plaintiff Gregory F. McCracken ("McCracken") was hired as a custodian at Carleton College in 1970.  (Compl. ¶ 4.)  Carleton is a liberal arts college in Northfield, Minnesota.  (Id. at ¶ 2.)  Carleton's Facilities Department maintains the campus grounds and buildings.  The Facilities Department employed eight supervisors and/or managers.  (Ex. H to Kruckeberg Aff., McCracken Dep. Ex. 3.)

McCracken held various positions during his forty years of employment. (Ex. A to Kruckeberg Aff., McCracken Dep. 27:12-28:5.)  At the time of his discharge, McCracken was a Maintenance Supervisor and supervised eleven employees.  (Id. at 43:1-5, 46:14-19.)

Carleton terminated McCracken's employment on April 27, 2011.  (Id. at 179:21-180:12.)  At that time, Kirk Campbell, the Director of Maintenance, was McCracken's direct supervisor, and Steven Spehn, the Director of Facilities, was Campbell's direct supervisor.  (Id. 38:10-14; Ex. C to Kruckeberg Aff., Spehn Dep. 5:22-6:5.)  The Director of Facilities reports to Carleton's Vice President and Treasurer, Fred Rogers.

### 2.  McCracken's Employment Concerns in 2006

In April 2006, McCracken believed that his job was in jeopardy. (McCracken Dep. Ex. 15; McCracken Dep. 138:3-22.)  He met with Vice President Rogers to discuss his concerns about his job.  (McCracken Dep. Ex. 15; McCracken Dep. 138:13-25.)  McCracken also raised concerns about Richard Strong, who at that time was Director of Facilities.  (McCracken Dep. 72:17-73:3, 138:23-25.)  McCracken stated that Strong was too focused on sustainable building methods and not on departmental needs, and that Strong proceeded with construction of a wind turbine project without obtaining county approval for the footing drawings.  (Id. at 74:1-13.)  McCracken also stated that Strong was threatening Campbell and another employee by making their jobs more difficult. (Id. at 74:13-14, 75:19-76:11.)  McCracken asked Vice President Rogers to investigate.  (Id. at 74:16-17.)

Strong was terminated in May 2006.  (Compl. ¶ 6.)  McCracken believed that Strong was fired as a direct result of Vice President Rogers' investigation. (McCracken Dep. 74:22-75:13.)  Carleton hired Spehn as the Director of Facilities in November 2006.  (Spehn Dep. 5:22-6:5.)

### 3.  McCracken's Job Performance

During the time that Campbell was McCracken's direct supervisor, McCracken had daily contact with Campbell.  (Ex. F to Kruckeberg Aff., Campbell Dep. 9.)  On April 9, 2007, McCracken received a positive performance evaluation from his supervisor Campbell.  (Compl. ¶ 10.)  However, at the end of 2007, Campbell was dissatisfied with aspects of McCracken's job performance. (Campbell Dep. 51:9-52:18, 53:23-54:7.)  Campbell was concerned that McCracken was not conducting building audits, which consisted of walking through buildings on campus to determine maintenance needs and writing work orders for those tasks.  (Id. at 45:24-47:15.)  Campbell had previously counseled McCracken on the need to perform these audits for years.  (Id.)  Campbell created what he termed a "recipe" for improving McCracken's performance of the building tours, which included directions on how to conduct the audits and frequency at which he should conduct the audits.  (Id. at 48:13-49:11.)

McCracken's failure to perform the audits was documented in his 2008, 2010, and 2011 performance appraisals.  (Id. at 49:25-55:7, 57:1-58:3; Campbell Dep. Ex. 1-3.)  In February 2011, Carleton issued McCracken a written warning for refusing to take the new Environmental Health and Safety Compliance Manager on building tours.  (McCracken Dep. 140:1-15.)  McCracken informed

his supervisor and the new manager that he "did not do social tours."

(McCracken Dep. 140:16-25, 141:7-18; McCracken Dep. Ex. 16; Ex. E to

Kruckeberg Aff., Haase Dep. 6:11-20, 19:20-20:16.)  After he received the written

warning, he performed the tours as instructed and testified that he understood

the reason he was assigned that duty.  (McCracken Dep. 146:20-148:1.)

### 4.  McCracken's Continued Employment Concerns

McCracken's concerns about losing his job continued in to February 2009.

At this time, he stopped making payments on the first and second mortgages on

his home to prepare for the anticipated loss of income if he lost his job.

(McCracken Dep. 14:12-25.)  McCracken believed that Vice President Rogers was

out to get him, and that Campbell's critiques and warnings were really messages

from Rogers, who wanted to terminate his employment.  (Id. at 99:9-16.)

Campbell testified that the goal of the warnings and evaluations was to improve

McCracken's performance.  (Id. at 72:12-14.)

In April 2009, McCracken met with Joanne Mullen, Carleton's

Ombudsperson,[1] to discuss his concerns about Rogers.  (Ex. G to Kruckeberg

---

[1]      The Ombudsperson is a confidential, impartial, independent and non-adversarial alternative for constructive dialogue and resolution of work-related

Aff., Mullen Dep. 5:24-6:5; McCracken Dep. 71:3-25.)  McCracken informed

Mullen that he felt that Rogers did not like him and that Rogers treated him

unfairly.  (McCracken Dep. 71:3-25.)  McCracken also stated that he believed

Rogers was retaliating against him because of their conversation three years

earlier about former employee Strong.  (Id. at 194:10-15.)  McCracken thought he

made Rogers look bad because Rogers was Strong's supervisor.  (Id. at 91:22-

92:10.)  McCracken also thought Rogers was retaliating against him because of

his age or weight.  (Id. at 114:10-115:7.)  Mullen agreed to keep McCracken's

concerns confidential per her standard practice and discussed McCracken's idea

to present his concerns directly to then Carleton President Rob Oden.  (Id. 83:14-

84:2.)

In June 2009, McCracken met with Oden.  (Id. at 93:13-94:18.)  After this

meeting, Oden told Rogers that McCracken was concerned about his

employment.  (Ex. D to Kruckeberg Aff., Rogers Dep. 28:3-19, 29:14-23.)  At this

time, Carleton was in the middle of discussions regarding possible reductions in

force due to budget issues.  (Id.)  Oden told Rogers that Carleton should not

pursue any disciplinary action against McCracken at that time.  (Id.)  Rogers had

problems and conflicts at Carleton.  (Mullen Dep. 6:13-25; McCracken Dep. Ex.
6.)

little interaction with McCracken, but he was aware that Spehn and Campbell had considered disciplining McCracken because of complaints to Human Resources regarding McCracken's bullying of his employees.  (Id. at 29:6, 30:3-10; Spehn Dep. 18:12-19:9.)  Following Oden's instructions, Spehn and Campbell did not discipline McCracken.  (Spehn Dep. 18:18-23.)

In January 2011, McCracken reported to Campbell that he witnessed one employee stealing air filters from a Carleton vehicle and putting them into his personal vehicle.  (McCracken Dep. 221:13-223:17.)  Campbell in turn reported this information to Spehn.  (Id. at 223:18-20, 224:3-10.)  The employee received a warning letter stating that he was not to take property from Carleton without receiving advance permission.  (Cárdenas Aff. ¶ 3.)

McCracken identifies the April 2009 report to Mullen, the June 2009 report to Oden, and the January 2011 report to Campbell as his whistleblower reports. [Docket No.16, Memorandum in Opposition to Motion for Summary Judgment]

### 5.  McCracken's Medical History

In March 2007, McCracken was referred to a psychiatrist by his medical doctor to cope with job-related stress.  (Compl. ¶ 8.)  McCracken testified that he had a history of depression that dated back to 1994.  (McCracken Dep. 24.)

On July 1, 2009, McCracken received a pacemaker implant in his heart. (Compl. ¶ 39.)  McCracken believed that his heart failed as a result of stress caused by the harassment at work.  (Id. ¶¶ at 15-16.)   McCracken returned to work on July 13, 2009 with no work restrictions or any requests for reasonable accommodation.  (McCracken Dep. 174:11-13; Ex. L to Kruckeberg Aff.)

In August 2010, McCracken hear a pop in his left knee while working at home in his yard.  (McCracken Dep. Ex. 22.)  McCracken sought treatment for his knee in October 2010 in anticipation of an upcoming vacation.  (McCracken Dep. 201:10-13, 204:16-20; McCracken Dep. Ex. 22.)  McCracken was diagnosed with a possible tear in his meniscus, and McCracken's doctor gave him the cortisone shot he requested, but the doctor did not provide any work restrictions. (McCracken Dep. 150:10-23, 151:22-25.)

McCracken reported his numerous physical disabilities, including his knee injury, placement of pacemaker, depression, and diabetes, to his supervisor, Campbell.  (Campbell Dep. 23-24.)

### 6.  The Ombudsperson's Workplace Assessment of the Facilities Department

In the later part of 2010 and early 2011, Mullen and Kerstin Cárdenas, Carleton's Human Resource Director, noticed an increase in the number of

complaints from Facilities Department employees who were concerned about their working environment.  (Mullen Dep. 22:9-23:10, 54:2-12; Ex. B to Kruckeberg Aff., Cárdenas Dep. 35:9-36:6, McCracken Dep. 56:17-23.)  Cárdenas and Spehn, in consultation with Mullen, decided to conduct an assessment of the Department in early 2011 in order to evaluate the reported concerns and determine whether the complaints were old complaints based on what happened in the past or if they were new complaints based on the current operation of the department.  (Mullen Dep. 54:2-12; Cárdenas Dep. 35:9-36:6; Cárdenas Aff. ¶ 3.)

Mullen interviewed a broad group of employees.  Mullen interviewed all the managers and supervisors in the Department and a large group of non-supervisory employees.  (McCracken Dep. Ex. 3.)  The non-supervisory employees included both individuals who did and did not voice concerns about the Facilities Department.  (Mullen Dep. 28:14-29:1, 44:11-18, 58:4-11.) McCracken and Campbell were among the interviewees.  (McCracken Dep. 58:4-11; Mullen Dep. 29:2-4, 43:2-6.)

Mullen prepared two written reports dated April 3, 2011, summarizing the results of the assessment.  (McCracken 58:12-15; McCracken Ex. 3.)  One version of the report included comments about Human Resources.  (McCracken Ex. 3.)

This is the only version before the Court.  Many of the complaints focused on

McCracken and Campbell.  McCracken acknowledged that he used strong

language with his employees, but he felt it was justified.  (McCracken Dep. 65:20-

66:11.)

Cárdenas and Spehn reviewed Mullen's report and met with her to discuss

a course of action.  (Mullen Dep. 39:7-22.)  Mullen recommended to Cárdenas

and Spehn that Carleton terminate the employment of McCracken and Campbell.

(Id. at 40:11-23.)  Mullen met with Cárdenas and Spehn for a second time and

Rogers joined the meeting.  Mullen presented the same recommendation and

also stated that Spehn could not maintain credibility if McCracken and Campbell

remained employed.  (Mullen Dep. 40:16-23, 41:11-19.)  Based on Mullen's

recommendation, Cárdenas, Spehn, and Rogers decided to terminate the

employment of McCracken and Campbell.  (Id. at 39:7-40:2; McCracken Dep.

178:24-179:13, 179:21-180:12.)

### 7.  McCracken's Termination

On April 26, 2011, Plaintiff was honored for his forty years of service to

Carleton College.  (Compl. ¶ 25.)  Spehn did not want to deprive McCracken of

recognition for the years he had worked at Carleton by accelerating the planned

termination.  (Ex. J to Kruckeberg Aff.)  Therefore, Spehn waited to terminate

MCracken's employment until after the ceremony.  (Id.)  On April 27, 2011, after

forty years of service to Carleton, Carleton terminated McCracken and Campbell.

(Campbell Dep. 8-9.)  At that time, McCracken was sixty years old and Campbell

was sixty-two years old.  (McCracken Dep. 11; Campbell Dep. 26.)  Carleton did

not immediately replace McCracken because it determined that his duties could

be absorbed by others.  (Cárdenas Dep. 38:5-11.)  On May 28, 2012, Carleton

hired Brian Lee, who was forty-five years old, at the time, as Maintenance

Supervisor.  (Spehn Dep. 31; Cárdenas Dep. 38:5-11.)

### B.      Procedural Background

On or about October 31, 2011, McCracken filed a Complaint against

Carleton in the Minnesota District Court, Third Judicial District, Rice County.

The Complaint alleges:  Count One: disability discrimination in violation of state

law; Count Two: age discrimination in violation of state law; Count Three:

retaliation discrimination in violation of state law; Count Four: whistle blower

violation in violation of state law; Count Five: retaliation violation of the whistle

blower law in violation of state law; Count Six: disability discrimination in

violation of federal law; Count Seven: age discrimination in violation of federal

law; and Count Eight: retaliation discrimination in violation of federal law.

On November 30, 2011, Carleton removed the lawsuit to this Court

pursuant to 28 U.S.C. § 1441.  Carleton now moves for summary judgment on all

counts.

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue

of material fact.  Celotex, 477 U.S. at 323.  Summary judgment is only appropriate

when "there is no dispute of fact and where there exists only one conclusion."

Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citation omitted).

### B.   Merits of Age Discrimination Claims

#### 1.   The ADEA and MHRA Standards

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§§ 623(a)(1) and 631(a) prohibits discrimination against employees over the age

of 40.  Similarly, the Minnesota Human Rights Act ("MHRA"), Minn. Stat.

§ 363A.08, subd. 2(2)(3), prohibits an employer from making adverse

employment decisions against an employee on the basis of the employee's age.

Claims arising under the MHRA are considered under the same analysis as

claims arising under the ADEA.  Lewis v. St. Cloud State Univ., 467 F.3d 1133,

1138 (8th Cir. 2006).

A claim under the ADEA may be proved by direct or circumstantial

evidence.  Id.  Where there is a lack of direct evidence of discrimination, a claim

of age discrimination is analyzed by using the burden-shifting analysis set forth

in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Chambers v.

Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 855 (8th Cir. 2003) (citation omitted).

Under this framework, Plaintiff must first establish a prima facie case of age

discrimination.  Id.  If Plaintiff can establish a prima facie case, the burden shifts

to Defendant to articulate a non-discriminatory reason for terminating Plaintiff.

Id.  Finally, if Defendant can articulate a non-discriminatory reason for

discharging Plaintiff, the burden shifts again to Plaintiff to demonstrate that the

reason articulated by Defendant is actually a pretext for age discrimination.  Id.

### 2.    Prima Facie Claim

13

The elements of a prima facie claim of age discrimination are: 1) Plaintiff was over the age of 40 years; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) he was replaced by someone substantially younger him.  McGinnis v. Union Pac. R.R., 496 F.3d 868, 875 (8th Cir. 2007) (citation omitted).

The Court finds that on this record, Plaintiff has put forth evidence to establish a prima facie case.  It is undisputed that McCracken was over the age of 40, that he suffered an adverse employment action when his employment was terminated, and that he was replaced by someone substantially younger than him.  McCracken was sixty years old and a forty-year employee of Carleton when his employment was terminated, and Carleton replaced him with a forty-five year old man.

With regard to the second element of Plaintiff's prima facie case, whether Plaintiff was qualified, this Court must keep in mind that the burden is not intended to be onerous.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  The record before the Court shows that up until 2007, McCracken's performance evaluations were positive. McCracken's performance evaluations in 2008, 2010, and 2011, however, included negative evaluations relating to his

14

performance of building audits.  The record further demonstrates that

McCracken's supervisor believed that McCracken could not perform these

building audits due to health issues.  McCracken received further instruction

from his supervisor on the building audits and a written warning for refusing to

conduct a building tour in 2011.  McCracken subsequently performed his duties

as instructed.  There is no evidence in the record before the Court that

McCracken received any other negative performance evaluations.  Viewing the

facts in the light most favorable to the Plaintiff, the record indicates that

McCracken met expectations and the Court finds that he has met his minimal

burden of establishing that he was performing his job adequately.  Therefore,

McCracken has put forth a prima facie case of age discrimination.

### 3.   Legitimate, Non-Discriminatory Reason for Termination

Once a plaintiff establishes a prima facie case, the defendant must

articulate a legitimate, non-discriminatory reason for terminating the plaintiff.

Lewis, 467 F.3d at 1137.  Carleton maintains that it had a legitimate, non-

discriminatory reason for terminating McCracken.  Carleton states that it

terminated McCracken based on Mullen's recommendation to terminate his

employment following her assessment of the Facilities Department, which was

conducted due to an increase in complaints from Facilities Department employees.

The Court finds that Carleton met its burden and now the burden shifts to McCracken to demonstrate that this proffered reason was actually pretext for age discrimination.

### 4.   Pretext

Once a defendant has articulated a non-discriminatory reason the plaintiff must show that the stated reason is in fact pretextual.  Lewis, 467 F.3d at 1137. "At this stage, [McCracken] can avoid summary judgment only if the evidence considered in its entirety (1) created a fact issue as to whether [Carleton's] proffered reasons are pretextual and (2) created a reasonable inference that age was a determinative factor in the adverse employment decision." Id.

To carry this burden of showing pretext, a plaintiff must show that the proffered justification for the adverse employment action is unworthy of credence.  Erickson v. Farmland Indus. Inc., 271 F.3d 718, 726 (8th Cir. 2001).  The methods which a plaintiff may use to demonstrate pretext include:

(1) demonstrating that the proffered reason has no basis in fact,

(2) demonstrating that the action the employer took was contrary to a policy or

practice, (3) showing that it is unlikely that the employer would have acted on

the proffered reason, and (4) providing evidence of a discriminatory attitude in

the workplace.  Id. at 727.  However, courts do not sit as "super personnel

departments" and should not substitute their own judgments for those made by

employers, except to the extent that those judgments involved intentional

discrimination.  Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir.

1995).

The Court finds that there are genuine issues of fact as to whether

Defendant's reasons for terminating Plaintiff are a pretext for age discrimination.

Carleton maintains that it terminated McCracken based on Mullen's

recommendation to Cárdenas, Spehn, and Rogers following her assessment of

the Facilities Department.  The Court, however, finds that there are many issues

of fact relating to the assessment of the Facilities Department that prevent the

Court from granting summary judgment in Carleton's favor.  For example, there

are fact questions as to whether the complaints voiced during Mullen's employee

interviews relate to the current operation of the department, whether the

complaints were in response to prior discipline of employees by the Plaintiff of

another supervisor, or whether the complaints were related to ongoing contract

negotiation issues.  There are also fact questions as to the truth and veracity of

information gleaned during the interviews as there is no indication in the record

that McCracken was given an opportunity to respond.  Further, there are fact

questions relating to Carleton's interpretation and application of Mullen's report.

Mullen's recommendation was that "[t]here needs to be change within the

Facilities Department."  (Ex. H to Kruckeberg Aff., Ex. 3 to McCracken Dep.)  The

report identifies numerous personnel-, procedural-, and practice-based problems

and identifies additional individual supervisors by name.  However, in the

record before the Court, there is only evidence that a sixty-year old employee

with forty years of service and a second employee who was sixty-two years old

were terminated.  Given these genuine issues of fact, McCracken's age at the time

of his termination and his forty-year term of service at Carleton, the Court denies

Defendant's motion for summary judgment on the age discrimination claims.

### C.    Merits of Disability Discrimination Claims

### 1.    The ADAAA and MHRA Standards

The ADA protects "any qualified individual with a disability" from

discrimination based on that disability.  Phillip v. Ford Motor Co., 328 F.3d 1020,

1023 (8th Cir. 2002) (quoting 42 U.S.C. § 12112(a)).  The ADA Amendments Act of

2008 ("ADAAA") was signed into law on September 25, 2008, and became

effective on January 1, 2009.  Pub. L. No. 110-325.  Because the conduct allegedly

giving rise to McCracken's claims occurred after that date, the amended version

of the ADA applies.  See Nyrop v. Indep. Sch. Dist. No. 11, 616 F.3d 728, 734 n.4

(8th Cir. 2010).

Likewise, the MHRA, Minn. Stat. § 363A.08, subd. 2, prohibits an employer

from making adverse employment decisions against an employee on the basis of

the employee's disability.  Minn. Stat. § 363A.08, subd. 2.  Claims arising under

the MHRA are considered under the same analysis as claims arising under the

ADAAA.  See Kobus v. Coll. of St. Scholastica, Inc., 608 F.3d 1034, 1038 (8th Cir.

2010) ("Apart from one difference not relevant here, an MHRA claim proceeds

the same way as does a claim under the ADA."); see also Kammueller v. Loomis,

Fargo & Co., 383 F.3d 779, 784 ("The MHRA 'materially limits' standard is less

stringent than the American with Disabilities Act ("ADA") 'substantially limits'

standard.").

A claim under the ADAAA may be proved by direct or circumstantial

evidence.  Bliss v. Morrow Enterprises, Inc., Civil No. 09-cv-3064C (PJS/JJK), 2011

WL 2555365, at *5 (D. Minn. June 28, 2011).  Where there is a lack of direct

evidence of discrimination, a claim of disability discrimination is analyzed by

using the <u>McDonnell Douglas</u> burden-shifting analysis.  <u>See</u> <u>Norman v. Union</u>

<u>Pac. R.R.</u>, 606 F.3d 455, 459 (8th Cir. 2010); <u>Dovenmuehler v. St. Cloud Hosp.</u>, 509

F.3d 435, 439 n.4 (8th Cir. 2007).  Under <u>McDonnell Douglas</u>, McCracken must

first establish a prima facie case of discrimination.  <u>Dovenmuehler</u>, 509 F.3d at

439.  The burden then shifts to Carleton to articulate a legitimate, non-

discriminatory reason for its actions.  <u>Id.</u>  Finally, McCracken must show that

Carleton's proffered reason was a pretext for discrimination.  <u>Id.</u>

### 2.     Prima Facie Claim

The following three elements comprise a prima facie claim of disability

discrimination: (1) that Plaintiff has a disability within the meaning of the

ADAAA; (2) that he is qualified to perform the essential functions of his job, with

or without reasonable accommodation; and, (3) that he suffered an adverse

employment action because of his disability.  <u>Dovenmuehler</u>, 509 F.3d at 439;

<u>Burchett v. Target Corp.</u>, 340 F.3d 510, 517 (8th Cir. 2003).

### a.     Disabled

With respect to the first element of the prima facie claim, the ADAAA

defines disability in the following three ways: "(A) a physical or mental

impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).

The Court finds that there is evidence in the record that indicates that McCracken suffered from depression and anxiety, sustained a knee injury, and used a pacemaker.  When viewing the record in the light most favorable to McCracken, the Court finds that he meets the minimal burden of establishing that he was regarded as disabled as McCracken has put forth evidence that his direct supervisor was aware of McCracken's medical conditions and believed that he could not perform the facility audits due to those conditions.

### b.    Qualified

The second part of a prima facie case of discrimination requires the plaintiff to prove that she or he is qualified to perform the essential function of the position, with or without reasonable accommodation.

> The determination of whether an employee is qualified to perform the essential functions of a job involves a two step inquiry.  First the employee must show that she meets the necessary prerequisites for the job, and then she must demonstrate that she can perform the essential functions, with or without reasonable accommodation.  If the employee establishes that she cannot perform the essential functions of the job without accommodation, she must also make a facial showing that reasonable accommodation is possible and that

the accommodation will allow her to perform the essential functions of the job.

Burchett v. Target Corp., 340 F.3d 510, 517 (8th Cir. 2003) (citations omitted); see also 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.2(m).  Essential functions are "fundamental job duties of the employment position the individual with a disability holds or desires."  29 C.F.R. §1630.2(n)(1).  Evidence of whether a particular function is essential includes:  the employer's opinion as to which functions are essential, written job descriptions, amount of time spent on the job performing the function, consequences of not requiring the employee to perform the function, terms of a collective bargaining agreement, work experience of employees who previously held the job, and/or current work experience.  29 C.F.R. §1630.2(n)(3).

As previously determined, the Court finds that McCracken meets the minimum burden of showing that he was qualified to perform the essential functions of the position.

### c.    Adverse Employment Action and Causal Connection

The third part of a prima facie case of discrimination requires the plaintiff to prove that she or he suffered an adverse employment action on the basis of the

disability.  It is undisputed that McCracken suffered an adverse employment

action when his employment at Carleton was terminated.  When viewing the

evidence in the light most favorable to McCracken, the Court determines that the

record indicates that there is a causal connection because McCracken's

supervisor believed he could not perform some of his duties due to his physical

limitations and because, as previously discussed, there are fact questions as to

the truth and veracity of the Mullen report.

### 3.      Legitimate Non-discriminatory Reason

Under the McDonnell Douglas burden-shifting analysis, once the plaintiff

establishes a prima facie case, the employer must articulate a legitimate non-

discriminatory reason for its actions.  Burchett v. Target Corp., 340 F.3d 510, 516-

517 (8th Cir. 2003).  As previously determined, the Court finds that Carleton has

proffered a legitimate non-discriminatory reason for terminating McCracken's

employment.

### 4.      Pretext

Under the McDonnell Douglas burden-shifting analysis, once an employer

articulates a legitimate, non-discriminatory reason for its actions, the burden

shifts back to the plaintiff to show that the employer's reason is a pretext for

discrimination.  St. Martin v. City of St. Paul, No. 11-176, 2012 WL 1987874, at *4

(8th Cir. June 5, 2012).

The parties do not specifically address this point in the context of the

disability discrimination allegations.  As previously determined, however, the

Court finds that there are genuine issues of material fact as to whether Carleton's

proffered reason is a pretext for disability discrimination and therefore the Court

denies Defendant's motion for summary judgment as to Plaintiff's disability

discrimination claims.

### D.     Merits of Retaliation Claims

The ADEA, ADAAA, and the MHRA forbid an employer from retaliating

against any employee because the employee complained about discrimination.

See 29 U.S.C. § 623(d); 42 U.S.C. § 12203(a); Minn. Stat. § 363A.15.  To establish a

prima facie claim of retaliation, McCracken must show that: (1) he engaged in

statutorily protected activity; (2) a materially adverse action was taken against

him; and (3) the materially adverse action was taken in retaliation for him

engaging in protected activity.  Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d

1034, 1043 (8th Cir. 2007) (identifying standard for violation of the ADA); Heisler

v. Metro. Council, 339 F.3d 622, 632 n.6 (8th Cir. 2003) (stating that claims under

the MHRA follow the ADA test); <u>Benford v. City of Minneapolis</u>, Civil No. 10-

04539 (ADM/LIB), 2012 WL 6200365, at *8-9 (D. Minn. Dec. 12, 2012) (identifying

standard for retaliation in violation of, <u>inter alia</u>, the ADEA, the ADA, and the

MHRA).  The Court applies a <u>McDonnell Douglas</u> burden-shifting analysis to

retaliation claims.  <u>See</u> <u>Dixon v. Mount Olivet Careview Home</u>, Civil No. 09-1099

(MJD/AJB), 2010 WL 3733936, at *7-10 (D. Minn. Sept. 17, 2010).

The Court finds that McCracken has waived his retaliation claims because

he failed to address these claims in his opposition to Carleton's motion for

summary judgment.  <u>See</u> <u>Anderson v. Durham D & M, L.L.C.</u>, 606 F.3d 513, 515

n. 2 (8th Cir. 2010).  The Court therefore grants summary judgment as to these

claims.

### E.    Merits of Whistleblower Claim

#### 1.    Standard

According to the Minnesota Whistleblower Act,

[a]n employer shall not discharge, discipline, threaten, otherwise
discriminate against, or penalize an employee regarding the
employee's compensation, terms, conditions, location, or privileges
of employment because:

(1) the employee . . . in good faith, reports a violation or suspected
violation of any federal or state law or rule adopted pursuant to law
to an employer or to any governmental body or law enforcement

official . . . .

Minn. Stat. § 181.932, subd. 1.  Courts apply the McDonnell Douglas burden-

shifting analysis to whistleblower claims filed under this Act.  Cokley v. City of

Otsego, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001).

In order to establish a prima facie case, Plaintiff "must show:

(1) statutorily-protected conduct by the employee; (2) adverse employment

action by the employer; and (3) a causal connection between the two."  Id.

(citation omitted).  According to the Minnesota Supreme Court:

> A whistleblower claim need not identify the specific law or rule that
> the employee suspects has been violated, so long as there is a federal
> or state law or rule adopted pursuant to law that is implicated by the
> employee's complaint, the employee reported the violation or
> suspected violation in good faith, and the employee alleges facts
> that, if proven, would constitute a violation of law or rule adopted
> pursuant to law.

Abraham v. County of Hennepin, 639 N.W.2d 342, 354–55 (Minn. 2002).

### 2.   Prima Facie Case

#### a.  Statutorily Protected Conduct

To engage in statutorily protected conduct, a plaintiff must have "blown

the whistle" for the protection of the general public, or at least, someone in

addition to the plaintiff and not just for plaintiff's own rights.  Obst v. Microtron,

Inc., 614 N.W.2d 196, 200 (Minn. 2000).  The plaintiff must make the report in

good faith.  Kidwell v. Sybaritic, Inc., 784 N.W.2d 220, 227 (Minn. 2010).  In order

to determine whether a report of a violation or suspected violation of law is

made in good faith, Minnesota courts examine not only the content of the report,

but also the reporter's purpose in making the report.  Obst, 614 N.W.2d at 202.

The central question is whether the reports were made for the purpose of

blowing the whistle, i.e., to expose an illegality.  Id.  Courts look at the reporter's

purpose at the time the reports were made, not after subsequent events have

transpired.  Id.  The employee does not need to identify the specific law that he

believes was violated, but there must be an actual federal or state law or rule

implicated by the facts asserted in the employee's complaint.  Kratzer v. Welsh

Cos., 771 N.W.2d 14, 22 (Minn. 2009).  A mere violation of company policy is

insufficient.  Amin v. Flagstone Hospitality Mgmt., LLC, No. 03–1181 (JRT/JSM),

2005 WL 3054599, at *6 (D. Minn. Nov. 14, 2005).  A "report" does not need to be

made in a formal manner in order to receive whistleblower protection. See Skare

v. Extendicare Health Servs., Inc., 515 F.3d 836, 841 (8th Cir. 2008).

        The Court finds that McCracken did not engage in statutorily protected

conduct.  Internal disputes over matters of office and personnel management fail

to support a whistleblower complaint for want of a violation of law.  See Hedglin

v. City of Willman, 582 N.W.2d 897, 902 (Minn. 1998).  Further, reports made in

the normal course of an employee's job duties are not statutorily protected

activity.  See Carlson v. Extendicare Health Services, Inc., Civil File No. 05-1438

(MJD/SRN), 2006 WL 2069254, at *6 (D. Minn. July 26, 2008) ("[E]mployees do not

engage in protected activity when making reports in the normal course of their

job duties."); see also Freeman v. Ace Telephone Ass'n, 404 F. Supp. 2d 1127,

1140 (D. Minn. 2005) (holding that CEO was simply doing his job in making

report because he was responsible for the financial health of the company and

had a duty to report to the Board any irregularities in the Board's practices).

### b.  Adverse Employment Action

McCracken claims that Carleton took adverse employment action against

him.  Discharge is an adverse action under the Minnesota Whistleblower Act.

See Anderson v. Graybar Elec. Co., Inc., 2010 WL 2545508, *11 (D. Minn. June 18,

2010).  Carleton does not refute this point.

### c.  Causal Connection

The causation element may be satisfied "by evidence of circumstances that

justify an inference of retaliatory motive, such as a showing that the employer

has actual or imputed knowledge of the protected activity and the adverse

employment action follows closely in time." <u>Dietrich v. Canadian Pac. Ltd.</u>, 536

N.W.2d 319, 327 (Minn. 1995) (citation omitted).

The Court finds that McCracken cannot demonstrate a causal connection

between any alleged protected activity and the adverse employment action.

There is no causal connection for Carleton to retaliate against McCracken for the

report about Strong as McCracken's alleged report occurred in April 2006, which

was five years before McCracken was discharged from Carleton.

### 3.     Legitimate Non-discriminatory Reason and Pretext

Because the Court determined that McCracken has not established a prima

facie case, the Court need not address whether Carleton can proffer a legitimate

non-discriminatory reason or whether that reason is a mere pretext.  The Court

therefore grants summary judgment as to this claim.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [Docket No. 10] is **GRANTED IN PART** and **DENIED IN PART**.


Dated:   August 26, 2013                          s/ Michael J. Davis
                                                  Michael J. Davis
                                                  Chief Judge
                                                  United States District Court